By the Court.—Freedman, J.
The plaintiff seeks to recover for services alleged by the complaint to have been rendered by him to the estate of George Harden, deceased, at the request of George Harden shortly previous to his death, and also at the request of the defendants in their representative capacity.
Such double request could be legally pleaded and proven in the action as brought, provided the contract was, in fact, made by the deceased (Benjamin v. Taylor, 12 Barb. 328).
If, on the other hand, the contract was not made by the deceased, but by the administratrix and administrator, the action should have been brought against the defendants individually, for the rule is well settled that the contracts of executors and administrators, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration moving between the promisee and the executors or administrators as promisors, are *429 the personal contracts of such executors and administrators, and do not bind the estate, notwithstanding the consideration moving from the promisee is such that the executors or administrators could properly have paid for the same from the assets, and been allowed for the expenditure in the settlement of their accounts (Austin v. Munro, 47 N. Y. 360 ; Ferrin v. Myrick, 41 Id. 315; Cary v. Gregory, 38 N. Y. Super. Ct. 127).
Upon the trial no attempt was made to show a contract by the administrators, nor was any evidence given of any promise on their part. Plaintiff confined himself to the establishment of a contract with the deceased and the rendition of services thereunder.
If, in pursuance of a contract thus made, services had been rendered before the death of the deceased, there could be no doubt that the- action was maintainable for their value against the defendants in their representative capacity.
The general rule has been established from very early times, with respect to such personal claims as are founded upon any obligation, contract, debt, covenant, or other duty, that the right of action on which the testator or intestate might have been sued in his lifetime, survives his death, and is enforceable against his executor or administrator. And the revised statutes expressly provide that actions of account, and all other actions upon contract, may be maintained against executors in all cases in which the same might have been maintained against their respective testators. And that administrators shall answer and be accountable to others to whom the estate was holden or bound, in the same manner as executors (2 R. S. 113 ; 3 Rev. St. [5th Ed.] 201, §§ 2, 3). The executors or administrators so completely represent their testator or intestate, with respect to the liabilities above mentioned, that every bond, or covenant, or contract of the deceased includes *430 them, although they are not named in the terms of it (Wentw. Off Ex. [14th Ed.] ch. 11, pp. 239, 243), for the executors or administrators of every person are implied in himself (By Lord Macclesfield in Hyde v. Skinner, 2 P. Wms. 197; Harwood v. Hilliard, 2 Mod. 265).
The next question, therefore, is whether it makes any difference that the services were rendered after the death of, but in pursuance of a contract with, George Harden.
There are many cases in which a liability may accrue against the executor or administrator, after the death of the testator or intestate, upon a contract made in his lifetime, although the executor or administrator be not named therein.
Thus, the executor is liable upon a bond which becomes due, or a note payable subsequently to the death of the testator.
So, if A. be bound to build a house for B. before such a time, and A. die before the time, his executor is bound to perform this contract.
And upon a contract by the decedent for the purchase of land, where the land has not been conveyed to him, nor the purchase money paid, the land contracted for is, in equity, considered as real estate, and as belonging to the heirs of the decedent-; and the unpaid purchase money is primarily chargeable upon his personal estate, and is to be paid by his executors or administrators for the benefit of such heirs.
It is only in cases where the contract is personal to the testator or intestate, that no liability attaches upon the executors or administrators, unless a breach was incurred in the lifetime of the deceased.
Thus, if an author undertakes to compose a work and dies before completing it, his executors are discharged from this contract; for the undertaking is merely personal in its nature, and by the intervention *431 of the contractor’s death, has become impossible to be performed.
So, a covenant by a master for the instruction of his apprentices is personal to the master, and his executors are not liable upon it.
But the covenant on the part of the master for maintenance of the apprentice still continues in force, and, therefore, the executor is liable, as far as he has assets, if he neglects to maintain him.
I am, therefore, of the opinion that the plaintiff is not precluded from maintaining the action as brought by reason of the fact that the services were rendered after the death of George Harden ; nor is there anything in the relations which he sustained to the deceased and the defendants that makes it inequitable or improper to allow him a fair compensation for the services actually rendered. The circumstances under which they wore rendered were as follows :
Mr. George Harden died on the 6th day of March, 1872. He was the owner of a large personal estate, amounting to about $1,250,000, consisting of stocks, securities, and choses in action. These securities were kept by him in a tin cash-box, which was usually kept in the Bank of the State of New York. On the 4th day of March (1872), the plaintiff, who had been for several years the confidential clerk of Mr. Harden, brought the box containing the securities from the bank to his (Harden’s) residence, No. 22- Cornelia-street. The box was opened by Mr. Harden, and then was again locked by him, and thereupon the key of the box was delivered by him to the plaintiff. At the same time, he stated to his wife (the defendant, Mrs. Elizabeth Harden), in the presence of the plaintiff, what his desires and intentions were in reference to the custody and disposition of the box and its contents after his death.
It is claimed on the part of the plaintiff, that the *432 delivery of the key of the box by Mr. Harden to him, and the declarations made by the deceased at the same time, amounted to an express or implied request, that the plaintiff would take the care and custody of the box and its contents until the administrators were appointed.
After the death of Mr. Harden, the plaintiff took the box to his house, No. 337 Bast Ninth-street, where it remained until the next day, when it was taken by the plaintiff to the Safe Deposit Company, where it was deposited and left in a box hired by the plaintiff, until the 14th day of March, when the box and its contents were handed over by the plaintiff to the defendants, who had been in the mean time appointed administrators.
Mr. Harden has no children or relatives residing in this country. His next of kin resided in Ireland, and after his death they or their representatives came over, and the securities were divided among them.
At the time of Mr. Harden’s death, the plaintiff had in his hands checks which had been signed and delivered to him by Mr. Harden in blank ; also a considerable portion of the stocks' contained in the box stood in the individual name of the plaintiff; whilst a considerable portion of the securities were transferable by delivery, and there is no evidence to show that any person other than Mr. Harden and the plaintiff had any knowledge of the value or extent of his estate, or the nature of the securities, or whether the stocks standing in the plaintiff’s name belonged to him or to Mr. Harden.
From these facts and circumstances it sufficiently appears, assuming them to have been established by competent evidence, that a special contract was made between George Harden and the plaintiff, whereby the latter undertook to take charge of the box and its valuable contents, and to become responsible for its safe *433 keeping from the time of Mr. Harden’s death until administrators could be appointed, and that plaintiff’s services were rendered in pursuance of such contract.
Some arrangement for the safe keeping of this immensely valuable and peculiar property up to the time that the personal representatives might be able to take charge of it, was absolutely necessary to the security of the estate ; and if the contract which is alleged to have been made with the plaintiff, though it remained executory during the life of Mr. Harden, had been made with, and subsequently performed by a stranger or an institution engaged in that line of business, it could not be questioned that such stranger or institution might maintain a claim against the estate for the service rendered. Why, therefore, should the mere fact that the plaintiff was the confidential clerk of George Harden, make any difference ? His general employment as such ceased with the death of his employer, and the administrators of the latter could not compel a continuance of his services. The safe keeping of the personal property entrusted to him, in the condition in which it was, involved duties and responsibilities very different from those which he had previously discharged in the service and under the eye and immediate instructions of the deceased. Besides, it involved a heavy responsibility. Consequently as long as plaintiff fully discharged the high trust reposed in him, I can perceive of no reason why he should not, at least, have the same claim and the same right of action against .the estate that a stranger would have possessed. Public policy is not against it. To deny him the benefit of this position, would leave him without any remedy whatever, for he cannot sue the defendants individually, because no contract was made with them either as individuals or as representatives. Besides, it is not disputed that the services for which compensa *434 tion is sought, were actually and faithfully rendered, and that they were highly beneficial to the estate.
' As a consequence, a dismissal of the complaint would have been error.
The action being maintainable in the form it was brought and the jury having found the contract to have been made as claimed by the plaintiff, the verdict cannot be disturbed except for errors of law committed on the trial. Defendant’s exceptions were ordered to be heard in the first instance at general term, and the entry of judgment was suspended. Upon such a disposition of the case no question of fact can be considered by the general term, nor the point that the verdict is against the weight of evidence (Mason v. Breslin, 2 Sweeny, 390 ; Hotchkiss v. Hodge, 38 Barb. 118). For the same reason, the verdict cannot be set aside on the ground that it is excessive, for that would involve an examination of the facts upon which it is based.
The exception to the decision of the motion for a new trial upon the minutes of the court is also unavailable to the defendants. The only mode for reviewing such decision is by an appeal from the order dedying the motion (Gregg v. Howe, 37 N. Y. Superior Ct. 424).
The questions left to be considered are mainly questions of evidence.
The only witnesses called to prove the contract with the intestate were the plaintiff and the defendant Elizabeth Harden.
The court, against the objection and exception of the defendants, permitted the plaintiff to testify on his own behalf to a conversation and interview with the defendants’ intestate. In so doing, the court acted upon the theory that the plaintiff could testify to conversations between the deceased and another, although the plaintiff was interested in the subject matter of the conversation, and participated therein, so long as the *435 plaintiff left out Ms own personal share of the conversation, so that the conversation and interview were (under the restriction and limitation imposed by the court upon its admissibility) presented in a mutilated shape.
TMs evidence, it is claimed by the defendants, was received in violation of the 399th section of the Code, and upon a most diligent search I have been unable to find any authority in favor of its admissibility.
The fact that the plaintiff was interested in and took part in the conversation, distinguishes the present from the cases of Simmons v. Sisson (26 N. Y. 276), and Lobdell v. Lobdell (36 Id. 333).
An examination of these cases will show that in neither case was the witness interested in, nor did he take part in, the conversation about which he was interrogated. Both cases were likewise decided upon the peculiar language of the 399th section of the Code, in which the word “ personally ” was used, so as to limit the section to transactions or communications “personally had.” Since that time the 399th section of the Code has been amended, not only in enlarging the class of parties who are subjected to its provisions, but also by striking out the words “ personally had,” and inserting the word “personal” before transaction or communication, so that the exclusion of the evidence depends upon the nature of the transaction or communication, and not upon the parties by or between whom it was physically had or made.
The latter case of Cary v. White (59 N. Y. 338), is claimed, however, as an authority in favor of the admission of the evidence. But the report of this case shows that a majority of the court did not concur upon the point upon which it is claimed to have been affirmed, nor does it appear that the witness had, at the time of the conversation, any interest in it, or that the transaction out of which the litigation arose was *436 the subject of the conversation. What the fact was which was sought to be proved, does not appear in the statement of the case, for the reason that the objection was put upon a ground which rendered a statement of the fact to be proved unnecessary; and inasmuch as the appeal in the court of appeals was from an order granting a new trial, and the court affirmed the order and gave judgment absolute against the appellant pursuant to the stipulation required by the code to be given in such cases, no means are left of ascertaining what evidence would have been elicited, had the excluded question been put. From the opinion of Johnson, J., concurred in by Grover, J., it appears, however, that the only two judges who expressed their views, were of the opinion that the evidence, if admitted, would not have shown a personal transaction or communication between the plaintiff and the deceased, and that for that reason it would have made no difference, if plaintiff had participated in the conversation.
The fácts in the case at bar are materially different. It here appears that the conversation to which the plaintiff testified, related to his employment by the intestate to perform the services for which the action was brought, and related, therefore, to a personal transaction with him and in which he was interested at the time. The plaintiff, after being cautioned by his counsel not to testify to anything that took place between himself and the deceased, was asked to state what the deceased stated in his presence to anybody else, and he commenced by saying: “I am going to.” These were obviously not the words of the intestate, but of the witness, who was going to tell what the intestate had said, and who thereupon proceeded as follows :
“ He said for to hire a safe and to put the things in the Safe Deposit Company, and keep them there until James Gray came out. And told Mrs. Harden, too, *437 that a box should be bought for James Gray exclusively, and that his securities should be separated to the extent of $500,000. He made a memorandum when he was not able to speak scarce, except with an effort, for to separate those securities. The conversation was that a safe was to be got in the Safe Deposit Company. That the valuables were to be deposited there, and kept there until James Gray arrived here.
“ Q. Was anything said in the conversation that you heard, as to who was to take charge of those securities, or of Mrs. Harden, or anything of the kind ? A. Yes, sir; I was to take charge.”
All this testimony was objected to as incompetent and improper, and the last answer defendants’ counsel moved to have stricken out, but the court overruled the objection and denied the motion, to which rulings defendants’ counsel duly excepted.
There can be but little doubt that the direction given in the course of the conversation testified to, that plaintiff should take charge of the securities, that a safe should be hired and that the securities should be deposited in the Safe Deposit Co., was a communication addressedo personally to the witness, and not to Mrs. Harden, for Mrs. Harden herself was to be cared for by the plaintiff, and that the plaintiff so understood it, is rendered certain by the fact that he complied with the direction.
It is upon this testimony that the plaintiff’s claim to having been employed mainly rests, and it is manifest that such contract of employment, if made as claimed, was not only a personal transaction between the witness and the intestate, but that it was personally concluded, and hence it is clearly within the mischief of the rule excluding such transactions and communications. It was none the less personal between the witness and the intestate, because Mrs. Harden participated in it, and as a personal transaction or *438 communication it was infinitely more explicit than the nod of Mr. Lord’s head towards the plaintiff, in Brague v. Lord, recently decided by the court of appeals. That action was brought for services rendered by the plaintiff as an attorney at law to Rufus W. Lord, deceased, the defendant’s testator, in relation to the recovery of certain stolen property consisting of a large amount of valuable securities owned in part by Rufus W. Lord and in part by a Mr. Barron. Upon the question of retainer the plaintiff was allowed to testify, among other things, that he was introduced by Barron to Lord as his, Mr. Barron’s, attorney. That on that occasion Mr. Barron and Mr. Lord talked of a power of attorney they had given, and that they agreed to- ' gether, on the advice of the witness, to revoke that power, which was done. On a subsequent occasion the witness testified to an interview between himself, Mr. Lord, and his brother, Thomas Lord, at which he said the subject of payment for his services arose ; that it was during a negotiation as to an amount to be paid in London, and Mr. Ruido W. Lord said to Mr. Thomas Lord, “We cannot tell what we will have to pay until we know what our lawyer’s charges are,” turning to plaintiff, the three being together, turning his head towards plaintiff.
With respect to this testimony, Rapallo, J., in delivering the opinion of the court, says : “ Advice given by the plaintiff to Mr. Lord was a personal communication and transaction between them within the meaning of the 399th section, and, connected with the proof that Mr. Lord accepted and acted upon such advice, was material, and tended to maintain the issue on the part of the plaintiff. Mr. Lord’s remark about what he would have to pay his lawyers, turning towards plaintiff, appears to have been addressed to plaintiff, as well as to Mr. Thomas Lord, and may have satisfied the jury that Mr. Lord looked upon plaintiff as his *439 lawyer throughout the transactions, and conceded that he would have to pay him as such. The remark to Mr. Thomas Lord about paying their lawyers, did not of itself amount to much.' It derived its significance wholly from the alleged turning towards plaintiff and thus giving him to understand that he was the party referred to. This, we think, was a personal communication within the intent of the 399th section.”
Entertaining these views, the court of appeals reversed the judgment and ordered a new trial, and this notwithstanding the fact that there was other evidence in the case upon which the jury might have found a retainer.
The reception of the evidence above referred to therefore constituted error.
Defendants’ exceptions should be sustained, the verdict set aside, and a new trial 'ordered with costs to defendants to abide the event.